UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECELIA DAWSON, on behalf of A.R., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | No. EDCV 09-00661 SS <br><br> **MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Cecelia Dawson (alternatively, "Plaintiff's mother") brings this action on behalf of her minor son A.R. ("Plaintiff"), seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Supplemental Security Income payments ("SSI").[1] Alternatively, he asks for a remand.

---

[1] Although this action was brought by Cecelia Dawson, the Court refers to A.R. as the plaintiff throughout this decision because he is the real party in interest.

The parties consented to the jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the Court's Case Management Order, the parties filed a joint stipulation ("Jt. Stip.") on November 30, 2009. The parties also filed a certified Administrative Record ("AR"). For the reasons stated below, the decision of the Commissioner is REVERSED and the case is REMANDED for further proceedings.

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on March 16, 2006. (AR 125). He alleged that he became disabled on June 15, 1992, the date of his birth (AR 148), due to a learning disability, asthma, and behavioral problems (AR 127).

After the Agency denied his claim initially and upon reconsideration, a hearing was held before Administrative Law Judge Thomas Gaye ("ALJ") on December 9, 2008. (AR 85). On February 2, 2009, the ALJ issued a decision denying benefits. (AR 4-17). Plaintiff sought review of the ALJ's decision before the Appeals Council, which upheld the decision on March 13, 2009. (AR 1-3). Plaintiff commenced the instant action on April 20, 2009.

//
//
//
//
//
//

**FACTUAL BACKGROUND**

Plaintiff was born on June 15, 1992. (AR 148). At the time of the hearing he was a sixteen-year-old tenth-grader living with his mother and an older sister.[2] (AR 11, 87).

**A.   Relevant Medical History**

**1.   Goldman Evaluation**

On August 2, 2006, Kim Goldman, Psy. D., performed a consultative psychological evaluation on Plaintiff, which included administration of the Wechsler Intelligence Scale for Children-IV ("WISC-IV"). (AR 281). Dr. Goldman noted the chief complaints as "learning problems, depression, trouble concentrating, can't get along with other people, can't sit still and doesn't do what he is told." (Id.). Plaintiff's grooming and hygiene were fair; he was pleasant and cooperative and made adequate effort during the examination. (AR 282). He had a broad range of affect and presented with a normal, non-depressed mood, although his mother described him as very moody. (Id.). Plaintiff responded in a coherent, relevant, and intelligible fashion. (Id.). He was alert and aware of his surroundings. (Id.). He correctly stated the date, the city of the exam, and the city of his residence, but could not name the day of the week. (Id.). He also knew his age and birth date, and the then-current President of the United States. (AR 283). He could

---

[2] At the hearing, Plaintiff testified that he was in eleventh grade. (AR 87). However, both his mother's testimony and school records indicate he was in the tenth grade. (See AR 104, 262-64).

register three objects and recall them after a three minute delay and could repeat six digits forward and three reversed. (Id.). According to a WISC-IV subtest, his fund of information was measured at 2% relative to others his age. (Id.). His concentration and attention were generally fair. (Id.). His judgment and understanding of social convention was in the ninth percentile relative to others his age, according to a different WISC-IV subtest. (Id.) The WISC-IV showed borderline verbal comprehension; borderline perceptual reasoning; low average working memory; extremely low processing speed; and a borderline IQ of 70. (AR 284).

Dr. Goldman diagnosed Plaintiff with Disruptive Behavior Disorder NOS, Borderline Intellectual Functioning, and a Global Assessment of Functioning ("GAF") score of 67. (Id.). In summary, Dr. Goldman stated that the disruptive behavior disorder and borderline intellectual functioning mildly impaired both Plaintiff's ability to respond to increasingly complex requests, instructions, and questions and his ability to communicate by understanding, initiating, and using language in an age-appropriate manner. (Id.). Disruptive behavior disorder mildly to moderately impaired his ability to socially integrate with peers and adults in an age-appropriate manner. (Id.).

**2. Goldbach Assessment** (AR 56-65)

On August 17, 2007, Shane Goldbach, working in conjunction with Louis Glatch, M.D., performed a clinical assessment of Plaintiff. (AR 56, 65). Goldbach identified the presenting problems as "talking back to teacher & not following directions. He is destroying property . Had

stolen property. Being suspended from school." (AR 56). The clinician noted as Plaintiff's strengths that he was intelligent and friendly. (Id.). The mental status exam notes state that Plaintiff's clothing was dirty and he was unkempt; he was defiant and distrustful, unable to hold eye contact, and talked softly; he was oriented to time and place; he had a dull, flat affect and was hostile and depressed, but without suicidal ideation. (AR 57). Goldbach reported that Plaintiff was coherent, of average intelligence with normal short and long-term memory, and withdrawn. (Id.). He also noted that Plaintiff's mother asserted Plaintiff had some delusions. (Id.). Mr. Goldbach diagnosed Plaintiff with "Disruptive Behavior NOS[;] R/O: Oppositional Defiant . . . [;] R/O: Mood Disorder NOS." (AR 61). He reported a GAF of 41. (Id.).

**4.    Other Medical Records**

An August 18, 2006 Childhood Disability Evaluation found that Plaintiff had no limitation in the following areas: Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, Moving About and Manipulating Objects, and Caring for Yourself. (AR 292-93). There was less than marked limitation in Health and Physical Well-Being due to controlled asthma. (AR 293). A February 5, 2007 Childhood Disability Evaluation found no limitation in Moving About and Manipulating Objects and less than marked limitation in Health and Physical Well-Being. (AR 319).

Between March and October 2008, Plaintiff visited Dr. Glatch for medication visits. These records show generally that Plaintiff was

compliant with his medication plan.  (See AR 427, 428, 429, 431, 434, 436).  Dr. Glatch reported that some angry outbursts continued.  (See AR 427, 436).

Other records reveal treatment, including surgery, for a fractured leg in 2006 (AR 349-412), and various generalized complaints (see, e.g., AR 327-48).

**B.  School Reports**

Junior high school records assess Plaintiff as unlikely to succeed "in the regular education curriculum without modification and support" because of "delays in cognitive functioning."  (AR 75).  Plaintiff was therefore placed in a resource specialist program ("RSP").  (AR 73). Records further reveal a pattern of disciplinary infractions for disruptive behavior and defiance.  (AR 218-220).

Plaintiff's records from Victor Valley High School identify him as having a learning disability and receiving RSP support.  (AR 71).  He received poor grades and had a pattern of excessive absences and tardies.  (AR 68).  Plaintiff continued to have disciplinary problems in high school, and was reported a number of times for disruptive behavior and defiance.  (AR 223-39, 254-58).  The pattern of disciplinary violations continued at the Susie Matthews Academy.  (See AR 262-64).

//
//
//

C.  **Hearing Testimony**

    1.  **Plaintiff's Testimony**

Plaintiff testified that he had been kicked out of a previous high school for fighting. (AR 87, 91). His favorite subject is math. (AR 89). However, he does not enjoy school, likes none of his teachers, and would rather be home-schooled. (AR 88). He asserted that he does not have friends and "just stay[s] at home all day." (AR 88-89). He plays no sports and does not have access to a computer. (AR 89, 92). Plaintiff testified that he does not take drugs, but takes two pills three times a day, presumably for treatment of Attention Defecit Hyperactivity Disorder ("ADHD"). (AR 90, 91). When questioned about a previous injury-a broken leg and hip-Plaintiff stated that he did not remember how it happened. (AR 94).

    2.  **Medical Expert's Testimony**

The medical expert testified that, although Plaintiff had been diagnosed with learning disorder, disruptive behavior disorder, borderline intellectual functioning, and ADHD, Plaintiff did not meet or equal any listing. (AR 90-91). He opined that Plaintiff had no limitations in the following domains: moving and manipulating objects, caring for himself, and health and physical well-being. (AR 94). For attending and completing tasks, Plaintiff fell between no limitation and less than marked limitation. (Id.). There was less than marked limitation in acquiring and using information. (Id.).
//

The expert also testified that Plaintiff's limitation in interacting and relating to others was less than marked. (Id.). He noted that, although the consultative examination gave a diagnosis of disruptive behavior and Plaintiff had a history of "oppositional behavior and some fights," he did not see evidence of "serious problems." (Id.). Addressing Plaintiff's reported IQ score of 70, the medical expert testified that he was unsure whether it was a full-scale IQ, because it did not appear that all of the sub-tests were given. (AR 96-97). He further opined that Plaintiff appeared to be functioning above that level in most other areas. (AR 96).

### 3. Plaintiff's Mother's Testimony

Plaintiff's mother testified that she was motivated to file the claim for SSI benefits because she was concerned abut his behavior: He "tear[s] up the house," is very angry, and does not get along with anyone "in the home or at school." (AR 102; see also AR 111). She was also concerned about his asthma and learning disability. (Id.).

She testified that he has been in special education since third grade. (AR 105-06). Nevertheless, he does not do well in school and had to repeat third and tenth grade. (AR 103, 104). Math is his best subject. (AR 104). Plaintiff switched high schools because he had been suspended fifty-six times for disruptive behavior. She also said that he has been expelled. (AR 105, 106).

According to his mother, Plaintiff is violent, beats up his sister, and was sent to juvenile hall for "[breaking] a little boy's face for

no reason." (AR 106-07). He has threatened to harm himself and the police have been called. (AR 109). She testified that Plaintiff takes Risperdal, which sometimes helps his behavior and allows her to control him. (AR 113).

**THE THREE-STEP CHILD DISABILITY SEQUENTIAL EVALUATION PROCESS[3]**

Under the provisions of the Social Security Act, amended in 1996 by Public Law 104-193, a child under the age of eighteen is "disabled" if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i) (West 2003). An impairment causes marked and severe functional limitations if it meets, medically equals, or functionally equals an impairment in the listings. 20 C.F.R. § 416.924(d).

In determining whether a child is eligible for SSI benefits on the basis of disability, the ALJ conducts a three-step inquiry. 20 C.F.R. § 416.924. The steps are:

(1) Is the child engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

---

[3] The three-step child disability sequential evaluation process applies for the period during which a plaintiff is under eighteen years old. Beginning the day the plaintiff turns eighteen, the Commissioner will then apply the disability rules used for adults filing new claims. 20 C.F.R. § 416.924(f).

>   (2) Is the child's impairment or combination of impairments severe? If not, the claimant is found not disabled. If so, proceed to step three.
>
>   (3) Does the child's impairment(s) meet, medically equal, or functionally equal an impairment in the Listing of Impairments ("Listing") described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled.

A claimant "meets" a listed impairment if his own impairments match those described in a listing. 20 C.F.R. § 416.925. A claimant "medically equals" a listed impairment if he demonstrates medical findings related to his own impairment that are of equal medical significance to the listed one, even if his showing is deficient in other ways. 20 C.F.R. § 416.926(a). A claimant "functionally equals" a listing if his impairments result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.[4] 20 C.F.R. § 416.926a(a). There are six domains of functioning the ALJ considers in determining functional equivalence: (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1) (2005).

---

[4] "Domains" are broad areas of functioning intended to capture all of what a child can or cannot do. 20 C.F.R. § 416.926a(b)(1).

**THE ALJ'S DECISION**

In his decision, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 7, 17). At the first step of the three-step child disability sequential evaluation process, the ALJ determined that Plaintiff was not engaged in substantial gainful activity at any time during the period of adjudication. (AR 10). At the second step, he found that Plaintiff has the following medically determinable impairments which are severe: Learning Disorder, Disruptive Behavior Disorder, Borderline Intellectual Functioning, and ADHD. (Id.).

Next, at the third step, the ALJ discussed Plaintiff's medical records, Plaintiff's and his mother's testimony, and the relevant factors listed in 20 C.F.R. § 416.924a. (AR 10-13). He found that Plaintiff did not have an impairment that meets or medically equals a listing. (AR 10). The ALJ then evaluated Plaintiff's functional limitations in the six domains, and determined that Plaintiff suffered less than "marked" limitations in Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others; and no limitation in Moving About and Manipulating Objects, Caring for Yourself, and Health and Physical Well-Being. (AR 13-17). Because he concluded that Plaintiff did not suffer from an "extreme" limitation in one area of functioning or a "marked" limitation in two areas, he determined that Plaintiff's impairments, alone or in combination, do not functionally equal any listed impairment. (AR 17). Accordingly, he found that Plaintiff is not disabled for purposes of eligibility for Supplemental Security Income payments. (Id.).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

//
//
//

**DISCUSSION**

Plaintiff submits four arguments supporting his contention that this case warrants either remand or an award of benefits. He first asserts that the ALJ committed legal error by failing to properly consider the consultative examination performed by clinical pyschologist Kim Goldman, Psy. D. (Jt. Stip. at 3-5). Second, he claims the ALJ failed to properly consider the opinion of Shane Goldbach, MFT. (Id. at 6-8). Third, he argues that the ALJ failed to properly consider the lay opinion of Plaintiff's mother. (Id. at 12-13). Finally, he asserts that the ALJ erred in finding that Plaintiff's impairment failed to meet or medically equal a listed impairment. (Id. at 15-18). Because the ALJ's error in finding that Plaintiff's impairment failed to meet or medically equal a listed impairment requires remand, the Court does not address the remaining issues.

Plaintiff argues that the ALJ improperly found that Plaintiff did not meet Listing 112.05D, which is satisfied when the claimant has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation on function." 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.05D. A physical or other mental impairment imposes an additional and significant limitation on function "if it causes more than minimal functional limitations, i.e., is a 'severe' impairment[], as defined in [20 C.F.R. § 416.924(c)]." 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00A.

//
//

Dr. Goldman administered the WISC-IV and assessed a verbal comprehension score of 71 and reported a full scale IQ of 70. (AR 284). "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, the lowest of these is used in conjunction with listing 112.05." 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00D9.

Here, Plaintiff appears to have met the first part of listing 112.05D–an IQ score of 60 through 70. However, at the hearing, the medical expert was unclear about the validity of this score. First, the medical expert asserted that 70 was not a full scale score, because there seemed to have been a partial administration of the test. (AR 96). The expert testified that his "hunch" when reviewing the evaluation was that Plaintiff "seemed to be functioning kind of above" that in most areas. (Id.). When asked directly whether the score of 70 was valid, the expert testified that he was unsure. (Id.).

//
//
//
//
//
//
//
//
//
//
//

The ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citations omitted). "Ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry." Id. (internal quotation marks omitted). Here, the evidence regarding Plaintiff's IQ score was ambiguous because it was unclear whether the IQ score of 70 was valid. Thus, the ALJ had a duty to develop the record in order to determine whether Plaintiff met listing 112.05D.[5]\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

---

[5] If the IQ score of 70 was valid, it is possible that Plaintiff met the listing, as the ALJ found that Plaintiff had "severe" medically determinable impairments such as Learning Disorder, Disruptive Behavior Disorder, and Attention Deficit Hyperactivity Disorder. (AR 10). As noted above, a severe mental impairment in addition to an IQ score within the identified range meets the listing. See 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00A; Id. at § 112.05D. Upon remand, the ALJ must reconsider whether or not Plaintiff meets this listing.

15

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING the case for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: January 27, 2010.                          /S/

                                                      _____
                                                      SUZANNE H. SEGAL
                                                      UNITED STATES MAGISTRATE JUDGE